UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

RUTHETTA L. ALFORD

                    Plaintiff,

v.

                                        Civil Action No.:
                                        1:21-CV-00737-JLS-LGF

NIAGARA FRONTIER TRANSIT METRO SYSTEM, INC.
and
ROBERT W. GUISE

                    Defendants.

---

### PLANTIFF'S RESPONSE  DEFENDANTS' MEMORANDUM OF LAW

### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

UNITED STATES DISTRICT COURT
FILED
JAN 1 4 2022
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

## *TABLE OF CONTENTS*

Preliminary Statement.................................................................2 – 35

STATEMENT OF RELEVANT FACTS.............................................8 6 – 9

THE RULE 12 (b) (6) AND SUMMARY JUDGMENT STANDARD.............10

I.  ACTION UNDER TITLE VII LIES AGAINST DEFENDANT GUISE..............10

II. ACTION UNDER TITLE VII LIES AGAINST DEFENDANT NFT METRO........11 – 12

   A.  Plaintiff's Harassment/Hostile Environment Claim is Illegally Sufficient..........11 – 12

   B.  Defendant Guise's Comments are properly attributed to Defendant NFT..........13

   C.  Plaintiff's Retaliation Claims..........................................................14

CONCLUSION.......................................................................10 15

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

RUTHETTA L. ALFORD

                          Plaintiff,

                                        Civil Action No.:
v.                                      1:21-CV-00737-JLS-LGF

NIAGARA FRONTIER TRANSIT METRO SYSTEM, INC.
and
ROBERT W. GUISE

                          Defendants.

---

### PLANTIFF'S RESPONSE T0 DEFENDANTS' MEMORANDUM OF LAW

### IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

#### Preliminary Statement

On Thursday, June 11, 2020, approximately from 2:40 p.m. to 2:55 p.m., Defendant

Guise and I had the following conversations listed below:

1. **Conversation #1:** Plastic bags in his office ~ Initiated by Defendant Guise

2. **Conversation #2:** Table décor at Allen~Medical Rail Station ~ Initiated by Plaintiff
   Alford.

3. **Conversation #3:** George Floyd Comments ~ Initiated by Defendant Guise

**After conversation #1,** I, Plaintiff Alford followed Defendant Guise out of my office into the hallway to his office. I shared with him that I was proud of my work at the Allen-Medical Station which is my signature station. I told him, "I placed a rag as a centerpiece on the table for décor."

**Defendant Guise, he went off!** Yelling at me in a loud voice, stating that I was encouraging people to enter the station to eat and etc. My response, "How am I encouraging the public to eat in the stations? They have been doing this for years as well as eating on the buses and smoking while on the trains and etc." He kept blaming me. I immediately returned to my office to avoid any further verbal assaults.

**The conversation takes a turn for the worst.** I, Plaintiff Alford am in my office when I look at my entryway Defendant Guise is standing in the hallway at my door entrance. I can't remember the first statement that was made about George Floyd. He begins to make additional comments stating, George Floyd is now being made a saint due to his death. He said, "He pulled a gun on a pregnant woman." I told him, "I don't know anything about that. I never heard that information."

I, Plaintiff Alford continually asked him, "What does his death have to do with me placing a cloth/rag as a centerpiece on a table? How does this relate to his death? I don't understand. Should I now be arrested by a White Officer shot, killed, and suffocated to death because I put a cloth on a table? Should a White female, Transit Officer arrest me, throw me to the ground, shoot, kill me, and/or suffocate me because I put a cloth on a table? I just don't understand. Why we are having this conversation and what has it to do with me placing a cloth/rag on a table?"

As Defendant Guise continued the conversation, I began to ignore him and type some documents as he continued talking, now stating, "George Floyd may not even be dead. This could be a hoax by the media." I just looked at him! Upon completion of the documents, I immediately went to see Ricardo to drop of the documents and inquire if he had heard the conversation. He said, "He did not." He was talking with someone in his office. I shared the incident with Dave Hooper and Ricardo Torres. While attempting to share this incident with Dave and Ricardo, I started cry hysterically unable to get the words out.

David Hooper and Ricardo Torres both advised me to speak with Rail Manager, Darren Haag. Mr. Hooper and/or Mr. Torres notified Darren on my behalf before he left work for the day. At the suggestion of Mr. Hooper and Mr. Torres, Darren Haag was notified after I got home. I, Plaintiff Alford, shared in the second Harassment Complaint, What I have not shared in the original report. As I was rushing out to leave for the day, I hurried out of the ladies' room and glanced to my right into Defendant Guise's office seeing that he had a huge grin on his face as he sat at his desk. After speaking with Darren, he strongly suggested that I submit this report instead of first meeting with Defendant Guise.

I, Plaintiff Alford brings a claim under Title VII of the 1964 Civil Rights Act against Defendant Robert W. Guise and the NFT METRO Systems, Inc. I, Plaintiff Alford, coworkers, children, family members, and friends all identify with the same race and color as George Floyd and his daughter and family members. Defendant Guise's behavior and conduct has violated the NFTA's Harassment in the Workplace creating a hostile work environment. I, Plaintiff Alford have not been treated professionally with dignity and respect. I have been embarrassed, humiliated, disrespected, harassed, and verbally discriminated against because of my race and color of my skin which is the same as George Floyd. Defendant Guise's behavior and conduct

has not only offended me, but my African American coworkers and every individual identifying as Caucasian that I have shared my story with. Defendant Guise's comments were very insensitive and unnecessary as well as his behavior not welcoming and made it very difficult for me to have to deal with him as my supervisor/manager. I, Plaintiff Alford no longer trust him and found it very difficult to return to work only to have to reset the trauma, mental, and emotional breakdown button.

Unfortunately, Defendant Guise's insensitive and disrespectful conduct towards me was not his first instance at the Rail. Due to my position of managing the Rail Clerical Office, African American and Caucasian employees both have reported back to me the comments that were made face to face related to why they didn't get the job they interviewed well for, qualified, and would have been a great fit. These comments were made face to face or behind their back and then reported from reliable sources.

David Hooper as previously mentioned was overwhelmed and emotionally troubled regarding the daily and weekly abuse and harassment that he suffered up until I when out for treatment. Also, Defendant Guise abused his managerial and supervisory authority with many of the rail employees that he supervised.

The basic facts and truth of this matter remain the same. Defendant Guise has been in leadership positions for approximately two decades commencing with his position as Rail Car Vehicle Maintenance Leader on third shift. He knows better. Unfortunately, I am unable to give Defendant Guise a racism, prejudice, and discrimination pass on the back of the late George Floyd. Defendant Guise has made a mockery of his death and rubbed it in my face.

Defendant Guise is a long-term employee whose behavior, conduct, and leadership skills have diminished over the past ten years or more. Defendant Guise is a very disgruntled and unhappy employee employed by the NFTA-METRO Management Team who is responsible for his actions. Defendant Guise is no longer able to effectively and proficiently lead by example which is damaging to the employee morale of the supervisors and employees.

Defendant NFT METRO failed to take the necessary steps to protect me as an employee. Other than speaking with Vivian Rogers and DeJuan Hardy, I heard not from any other management team personnel from MTC Headquarters, such as Executive Director, Kimberley, Minkel, Surface Transportation Director, Tom George, and Human Resources Director, Karen Novo. Rail Manager, Darren Haag did the very best that he could to accommodate me every time I had an emotional breakdown and difficult time at work. Defendant's NFT METRO System, Inc. and Guise are responsible under the Civil Rights Title VII Violations. Also, Defendant Guise received a light discipline with no regards to how this incident affected me.

Defendant NFT METRO has given Defendant Guise and many other managers, supervisors, and team leaders throughout the company the permission to continue to abuse and misuse their authority unable to effectively build networking teams, leaders, and increasing the employee morale among the company managers, supervisors, and all Rail employees. The Rail Yards and Shops location has been a very hostile environment for approximately the past ten years or more. Heated verbal altercations from employee to employee, supervisor to supervisor, manager to supervisors, and managers to employees. Heated verbal altercations were held in the open, men's room, and behind closed doors with visitors standing in the hallway. Some of the heated verbal altercations have almost led to minor fights. The majority of these instances have

happened on the second floor in view of my sight and hearing outside of my office for all to see and hear.

### Statement Of Relevant Facts

I, Plaintiff Alford performed the following additional duties and responsibilities under the title of Rail, Senior Clerk A {Administrative Assistant, Supervisor, and Manager} without sufficient pay increase and office staff from November 2010 to September 24, 2020. Due to the lack of staff and proper coverage when out of the office, my worked easily began to back up putting me further behind and eventually unable to continue to keep year after year as the season of end of the reports and beginning of the new year approached causing me to work overtime seasonally to stay current with mandatory reports.

I, Plaintiff Alford made my complaint known on the afternoon of Thursday, June 11, 2020, with Rail Manager, Darren Haag. As previously stated, Manager Haag was already aware of the incident. During my meeting with Vivian Rogers and DeJuan Hardy on Tuesday, June 16, 2020, I cried in that meeting as well. I questioned Ms. Rogers as to why Defendant Guise would say the things that he did. I prepared the original formal complaint on Friday, June 12, 2020, prior to leaving work for the day. Defendant Guise's written report and account of the incident was very incentive as he referenced George Floyd's death as the George Floyd thing.

I, Plaintiff Alford, spoke with Ms. Rogers approximately one week later after the incident. I believe she called me. When we spoke, I asked, "Why was my harasser still working?" She asked, "What do you mean?" I informed her of what was shared with me. Defendant Guise was told, "he had to be more sensitive to culturally diversity issues and he had to attend training. She put me on hold and entered into Mr. Hardy's office and put us on speaker.

I asked Mr. Hardy the same question. Mr. Hardy said, we made a decision, "It was his first offense. I told him, "anchor men and women have been fired for saying less over the airways and George Floyd doesn't get a second at life. We don't know him, he doesn't live here, and he don't work here." Ms. Rogers asked, "Did I want to file a Harassment Complaint?" I received the paperwork prior to the end of June 2020. I, Plaintiff Alford was an emotional wreck and had difficulty filling out the paperwork in a timely manner. It took me from the end of June 2020. Also, the reason that I was delayed in completing the Employee Injury Report. When I spoke with Ms. Rogers again, I shared the difficulty that I was having emotionally and asked, if I had a deadline to complete the paperwork.

Defendant Guise claims that he told me not to put a cloth on the table. Defendant Guise and no one else ever told me not to put a cloth/rag on the table. In fact, I continued to place a cloth/rag on the table as I was led, had the proper staff, or I cleaned the Allen-Medical Rail Station. No one ever spoke to me again about placing a cloth on the table. No one checked the rail station video cameras on the weekends that I continued to work to see if I continued to place a cloth on the table. Yes, please see attached and before pictures.

All of Defendant Guise's thoughts, comments, and unprofessional behavior were unnecessary and uncalled for along with being very insensitive to my feelings, race, culture, and African American and Caucasian employees. I never shared with Defendant Guise or anyone Caucasian in the office about how I was feeling about Mr. Floyd's death, Breona Taylor's death, the Rioters in our city, and so many more African Americans who lost their life due to racial injustices at the hands of police brutality and racial injustice killings. No record is on file accusing Defendant Guise of harassment and in particular racial harassment. The Rail employees were afraid to report it in fear of retaliation.

I, Plaintiff Alford was not the only one who wanted to see Defendant Guise discharged.
The entire management team at the rail·was shocked to see and hear that he got off easy to
continue to do what he does best. I, Plaintiff Alford always had intentions of filing an Employee
Injury Report. I was delayed in filing it due the length of time it took to complete the
Harassment paperwork. I received the paperwork near the end of June 2020 and finally
submitted it on August 3, 2020.

- Following the incident on Thursday, June 11, 2020, I, Plaintiff Alford suffered daily
  mentally and emotionally especially while at work and home.

- Additionally, I was unable to continue to keep up with my daily workload. Manager
  Darren Haag was made aware of my emotional and mental breakdowns. I constantly had
  to excuse myself to the ladies' room and/or go outside to get fresh air because I could not
  breathe.

- I was very uncomfortable being at work daily having to see or know that Defendant
  Guise was at work and two doors down.

- I, Plaintiff Alford found myself uncontrollably crying in public on street corners and at
  bus stops while waiting for my bus to go home.

I, Plaintiff Alford did refuse to down grade my mental health issues from Worker's
Compensation to Disability Leave. I was previously told that I had a certain time period to file
for Disability Leave. When Ms. Novo's letter was received, the deadline to submit the
paperwork was past the open window.

I, Plaintiff Alford worked with the NFTA Worker's Compensation Dept. receiving
internal job postings in order to return to work. Due to my ongoing mental health issues, it has
prevented from returning to work at the Rail Yards and Shops knowing that Defendant Guise

was still working and has not retired as scheduled January 2021. Also, I had numerous concerns

and fears with working in another position throughout the company.

- I, Plaintiff Alford had two horrible nightmares and constant dreams about returning to

  work. These nightmares are on file with my out-patient treatment provider.

  - I dreamed that former ATU 1342 Union President, Vince Crehan attempted to

    shoot me outside of Rite Aid Pharmacy in my neighborhood.

  - I dreamed that I returned to work at the rail. I was working third shift.

    While on my lunch and napping, Defendant Guise entered into my office and

    blew on my face to see if I was awake. I didn't respond. Defendant Guise

    sexually assaulted me vaginally with his right hand.

I, Plaintiff Alford started the process of reaching out to the EEOC by phone in November

2020. Due to returning home from FHE Health, readjusting to be back home, and suffering from

anxiety, panic attacks, major depression, PTSD, and trauma, it was very difficult for me to

function. I, Plaintiff Alford on or about March 3, 21, was awarded the <u>Right To Sue My</u>

<u>Employer</u>. I was instructed to save all documents related to my case and I had 90 consecutive

days to file my complaint. They decided that a full investigation was not necessary.

I, Plaintiff Alford was forced to consider retiring due to the fact that I was not mentally

and emotionally stable at the time I had to make the final decision to retire. I spoke with several

union officers regarding retirement. I was told to contact Sue at the Union Hall. Sue was quick

with supplying the figures. I had to wait until she returned to work after making my final

decision with my healthcare therapists.

## The Rule 12 (b) (6) And Summary Judgment Standards

I, Plaintiff Alford request that after you read through all of the documents prepared for your review, you would find my statements, affidavits, and exhibits to be factual to support my claims and dismiss the Defendant NFT METRO System, Inc. and Defendant Robert W. Guise Motion For Dismissal/Summary Judgment and continue to award my case a hearing.

## I.  ACTION UNDER TITLE VII {FACTS} ~~LIES~~ AGAINST DEFENDANT GUISE

I, Plaintiff Alford have responded to Defendant Guise fabricated statements. **Defendant Guise, he went off!** Yelling at me in a loud voice, stating that I was encouraging people to enter the station to eat and etc. My response, "How am I encouraging the public to eat in the stations? They have been doing this for years as well as eating on the buses and smoking while on the trains and etc." He kept blaming me. I immediately returned to my office to avoid any further verbal assaults.

**The conversation takes a turn for the worst.** I, Plaintiff Alford am in my office when I look at my entryway Defendant Guise is standing in the hallway at my door entrance. I can't remember the first statement that was made about George Floyd. He begins to make additional comments stating, George Floyd is now being made a saint due to his death. He said, "He pulled a gun on a pregnant woman." I told him, "I don't know anything about that. I never heard that information."

I, Plaintiff Alford continually asked him, "What does his death have to do with me placing a cloth/rag as a centerpiece on a table? How does this relate to his death? I don't understand. Should I now be arrested by a White Officer shot, killed, and suffocated to death because I put a cloth on a table? Should a White female, Transit Officer arrest me, throw me to

the ground, shoot, kill me, and/or suffocate me because I put a cloth on a table?  I just don't understand.  Why we are having this conversation and what has it to do with me placing a cloth/rag on a table?"

As Defendant Guise continued the conversation, I began to ignore him and type some documents as he continued talking, now stating, "George Floyd may not even be dead.  This could be a hoax by the media."  I just looked at him!  Upon completion of the documents, I immediately went to see Ricardo to drop of the documents and inquire if he had heard the conversation.  He said, "He did not."  He was talking with someone in his office.  I shared the incident with Dave Hooper and Ricardo Torres.  While attempting to share this incident with Dave and Ricardo, I started cry hysterically unable to get the words out.

## II. ACTION UNDER TITLE VII {FACTS} ~~LIES~~ AGAINST DEFENDANT NFT METRO

A.  Plaintiff's Harassment/Hostile Environment Claim is Illegally Sufficient

I, Plaintiff Alford brings a claim under Title VII of the 1964 Civil Rights Act against Defendant Robert W. Guise and the NFT METRO Systems, Inc.  I, Plaintiff Alford, coworkers, children, family members, and friends all identify with the same race and color as George Floyd and his daughter and family members.  Defendant Guise's behavior and conduct has violated the NFTA's Harassment in the Workplace creating a hostile work environment.  I, Plaintiff Alford have not been treated professionally with dignity and respect.  I have been embarrassed, humiliated, disrespected, harassed, and verbally discriminated against because of my race and color of my skin which is the same as George Floyd.  Defendant Guise's behavior and conduct has not only offended me, but my African American coworkers and every individual identifying as Caucasian that I have shared my story with.  Defendant Guise's comments were very insensitive and unnecessary as well as his behavior not welcoming and made it very difficult for

me to have to deal with him as my supervisor/manager.  I, Plaintiff Alford no longer trust him and found it very difficult to return to work only to have to reset the trauma, mental, and emotional breakdown button.

On June 11, 2020, Defendant Guise returned to my office, Plaintiff Alford's, blocking my entryway and starting to vocalize his thoughts and opinions about George Floyd's death and past life.  I, Plaintiff Alford am shocked and blindsided again.

- Defendant Guise began making the following negative comments about George Floyd.
    - I can't remember the first comment, I believe it was related to the counterfeit twenty-dollar bill.
    - George Floyd is now being made a saint.
    - He pulled a gun on a pregnant woman.

I, Plaintiff Alford began questioning Defendant Guise as to where did he get this information from and what does it have to do with me putting a cloth on a table as a centerpiece?

- Defendant Guise's final comments to me were, "Well, as far as we know this could be a hoax by the media.  George Floyd may not even be dead."  Defendant Guise returned to his office.  This was two days after Mr. Floyd's funeral.
- I, Plaintiff Alford, am disgusted and very upset.  I was trapped in my office with no way out while Defendant Guise taunted me with his thoughts and opinions of George Floyd.
- My only way to exit my office was to get near Defendant Guise and asked to be let out of my office or brush by him and be accused of assaulting him.
- This is the second instance Defendant Guise created a hostile work environment.

**B. Defendant Guise's Comments are properly attributed to Defendant NFT**

Defendant Guise since becoming a Rail Superintendent {Dept. #54}, Rail Manager {Dept. #50, and prior positions as an ATU 1342 member had numerous issues with his peers.

- Defendant Guise and I, Plaintiff Alford had a great networking relationship while he supervised as Rail Car Vehicle Maintenance Superintendent {Dept. #54}.

- Defendant Guise and I, Plaintiff Alford also had an awesome networking relationship when he became Rail Maintenance Manager {Dept. #50}.

  - Defendant Guise within the past five to six years began to become very disgruntled with the management team at MTC Headquarters and the Rail Yards & Shops.

  - David Hooper was a victim of Defendant Guise and never filed an internal complaint against him.  It was a well-known fact to the management team at the Rail.

  - David Hooper was constantly embarrassed, humiliated, and harassed by Defendant Guise in his office in front of Mr. Hooper's staff, in rail staff meetings, as well as the other supervisors, and ATU 1342 employees and union officers.

  - David Hooper was very troubled by Defendant Guise's actions on a daily to weekly basis when he and Defendant Guise worked.

  - Defendant Guise also displayed disgruntled and insulting behaviors with other staff members with whom he did not agree or share his opinion.  He stopped attending or was asked not to attend the Managerial Staff Meetings held by Tom George, Surface Transportation Director.

### C. Plaintiff's Retaliation Claims

I, Plaintiff Alford believe because the Defendant NFT METRO System, Inc. did nothing to protect me and allowed Defendant Guise to remain employed was their first step to retaliate against me because I filed two complaints.  The adverse action caused by Defendant Guise has caused me to continue to suffer with mental health issues which has affected my current ability to attempt to gain other employment.  Also, my Local Union, ATU 1342, took a back seat and did nothing to check on my medical status and well-being after the incident including up to the when I retired.  I was left alone trying to answer questions that have gone unanswered to date.

## **CONCLUSION**

I, Plaintiff Alford do request the courts to hold Defendant NFT METRO System, Inc. and Defendant Guise liable under the Civil Rights Title VII for the verbal and racial harassment and workplace environment that I and my coworkers have had to endure.


Ruthetta L. Alford,
Plaintiff, Pro Se

01 | 14 | 2022

Date

RE:  *Alford v. Niagara Frontier Transit Metro System, Inc. and Robert W. Guise*
*Civil Action #: 121:-cv-00737 JSL*

# Exhibits

# A

# To

# F

*RE:  Alford v. Robert W. Guise and Niagara Frontier Transit Metro System, Inc.*
*Civil Action #: 121:-cv-00737 JSL*

# Exhibit

# 'A'

## {2 Pages}

Harassment Complaint Filed

June 12, 2020



**NFTA**
Niagara Frontier Transportation Authority
*Serving Buffalo Niagara*

# INTER DEPARTMENTAL CORRESPONDENCE

To:      *Darren K. Haag*
         Manager, Metro Rail

Date:    June 12, 2020

From:    Ruth L. Alford
         Senior Clerk A

Subject:  3~Part Conversation
          {Short Version}

On Thursday, June 11, 2020, from approximately 2:40 to 2:55 pm. Bob Guise and I had a 3~Part Conversation which left me in a very emotional state to say the least.

The origination of the conversations are listed below:

**Conversation #1:**  Plastic bags in his office ~ Initiated by Bob.

**Conversation #2:**  Table décor at Allen~Medical Station ~ Initiated by me.

After conversation #1, I followed Bob out of my office into his office.  I shared with him that I was proud of my work at Allen Station which is my signature station.  I told him that I placed a rag as a centerpiece on the table for décor.

**He went off!**  Stating that I was encouraging people to enter the station and eat and etc.  My response, how am I encouraging the public to eat in the stations. They have been doing this for years as well as eating on the buses and smoking while on the trains and etc.  He kept blaming me.

**Conversation #3:**  George Floyd Comments

**The conversation takes a turn for the worst.**  I am in my office and bob is standing in the hallway at my door entrance.  He begins to make comments saying that G. F. is now being made a saint due to his death.  He said, "He pulled a gun on a pregnant woman.  I told him, I don't know anything about that.  I never heard that information.

I continually asked him, what does his death have to do with me placing a cloth/rag as a centerpiece on a table?  How does this relate to his death?  I don't understand.

Should I now be arrested by a White officer and shot, killed and suffocated to death because I put a cloth on a table? Should a White female, Transit Officer arrest me, throw me to the ground, shoot, kill me and/or suffocate me because I put a cloth on a table? I just don't understand why we are having this conversation and what it has to do with me placing a cloth/rag on a table.

As he continued the conversation, I began to ignore him and type some documents as he continued talking, now stating that G. F. may not be dead. The Media could have made this up. I just looked at him.

Upon completion of the documents, I immediately went to see Ricardo to drop of the documents and inquire if he had heard the conversation. He said, "He did not." He was talking with someone in his office. I shared the incident with Dave and Ricardo.

Darren was notified after I got home and suggested that I submit this report.

RE:  *Alford v. Robert W. Guise and Niagara Frontier Transit Metro System, Inc.*
*Civil Action #: 121:-cv-00737 JSL*

# Exhibit

# 'B'

# {8 Pages}

## Harassment Complaint Filed

## August 3, 2020

Niagara Frontier Transportation Authority

## Harassment Complaint

☒ Race   ☐ Sexual harassment (includes same sex harassment)   ☐ Religion   ☒ Color   ☐ National Origin   ☐ Age

☒ Work Procedures   ☐ Disability   ☐ Retaliation   ☒ Hostile Work Environment

Any employee who believes that he/she has been subjected to harassment should consult with the Manager of Equal Opportunity/Diversity Development or designated representative in an effort to resolve the matter informally. Every attempt will be made to resolve this complaint within 30 working days after filing.

Your Name:  Ruthetta (Ruth) L. Alford          Phone Number:  716.816.5881

Address:    12 Olcott Place - Cheektowaga, NY 14225

Department:  Rail Maintenance          Position:  Senior Clerk A
             Admin Office

Immediate Supervisor:  Robert (Bob) Guise          Shift:  First

Name of the person whose behavior is in question:  Bob Guise

Department:  Rail Maintenance          Position:  Manager

Describe the alleged harassment incident(s).  List specific details (include words, gestures, where the unwelcome behavior occurred:

**See Attached 5 Page Report.**

Revised: 02/21/19                                                                1

Where did the alleged harassment incident(s) take place?


List the date(s) and time(s) the alleged harassment incident(s) occurred:



Is this alleged behavior ongoing?



Identify any witnesses / or other person who may have relevant information regarding the alleged harassment:



Did you discuss the alleged harassment with anyone?

If yes, with whom and when:


Did anyone see you immediately after the alleged harassment?

If yes, whom and where:



Are you aware of any other employees (current or former) who you believe have been subjected to the same or similar type of treatment by the alleged harasser?



Did you report the incident(s) to anyone in management?

If yes, to whom and when:



How has the alleged harassment affected you?

Has the alleged harassment affected your job in any way?

**See Attached 5 Page Report.**

Have you kept any notes or other evidence relating to the alleged incident(s)?

If yes, please provide copies.

*You are encouraged to attach all additional material if you believe it will assist in the investigation.*

**CERTIFICATION:** The Authority considers harassment to be a form of employee misconduct. Individuals who engage in harassing behavior, including managerial and supervisory personnel who knowingly allow such behavior to continue, will be subject to disciplinary action, up to and including termination. Persons who intentionally file false complaints under the policy, or who intentionally provide false information in connection with an investigation into an allegation of harassment will be subject to disciplinary action, up to and including termination. ___QA___
(initials)

Complainant's
Signature: _____   Date: _8|2|2020_

Received by: _____   Date: _____

Job Title: _____

**Completed form should be returned to:**
Manager, EEO/ Diversity Development
181 Ellicott Street
Buffalo, NY 14203
EEO.DBE@nfta.com

**The Niagara Frontier Transportation Authority is an equal opportunity employer and does not discriminate based on sex, race, color religion, disability or national origin.**

Revised: 02/21/19

Ruth L. Alford                           Harassment Complaint                           June 2020

***Additional information has been added to this report not included in the
original report.***

As previously stated, on Thursday, June 11, 2020, from approximately 2:40 to 2:55
pm. Bob Guise and I had a 3~Part Conversation which left me in a very emotional state
to say the least.  To date, I continue to battle severe emotional issues.

## The origination of the conversations are listed below:

**Conversation #1:**  Plastic bags in his office ~ Initiated by Bob.

**Conversation #2:**  Table décor at Allen~Medical Station ~ Initiated by me.

**After conversation #1,** I followed Bob out of my office into his office.  I shared
with him that I was proud of my work at the Allen Station which is my signature station.
I told him that I placed a rag as a centerpiece on the table for décor.

**He went off!**  Yelling at me in a loud voice, stating that I was encouraging people
to enter the station and eat and etc.  My response, "How am I encouraging the public to
eat in the stations?  They have been doing this for years as well as eating on the buses and
smoking while on the trains and etc."  He kept blaming me.

**Conversation #3:**  George Floyd Comments

**The conversation takes a turn for the worst.**  I am in my office and Bob is
standing in the hallway at my door entrance.  I can't remember the first statement that was
made about G. F.  He begins to make comments saying that G. F. is now being made a
saint due to his death.  He said, "He pulled a gun on a pregnant woman."  I told him, "I
don't know anything about that.  I never heard that information."

I continually asked him, "What does his death have to do with me placing a cloth/rag
as a centerpiece on a table?  How does this relate to his death?  I don't understand."

Should I now be arrested by a White officer and shot, killed and suffocated to death
because I put a cloth on a table?  Should a White female, Transit Officer arrest me,
throw me to the ground, shoot, kill me and/or suffocate me because I put a cloth on a
table?  I just don't understand.  Why we are having this conversation and what has it to do
with me placing a cloth/rag on a table?

1

Ruth L. Alford                    Harassment Complaint                    June 2020

As he continued the conversation, I began to ignore him and type some documents as he continued talking, now stating that G. F. may not be dead. The media could have made this up. I just looked at him.

Upon completion of the documents, I immediately went to see Ricardo to drop of the documents and inquire if he had heard the conversation. He said, "He did not." He was talking with someone in his office. I shared the incident with Dave Hooper and Ricardo Torres. While attempting to share this incident with Dave and Ricardo, I started cry hysterically unable to get the words out.

Dave and Ricardo both advised me to speak with Darren. Dave notified Darren on my behalf before he left work for the day. At the suggestion of Dave and Ricardo, Darren Haag was notified after I got home.

What I have not shared yet is as I was rushing out to leave for the day, I hurried out of the ladies room and glanced to my right into Bob's office seeing that he had a huge grin and smile on his face as he sat at his desk.

After speaking with Darren, he strongly suggested that I submit this report instead of first meeting with Bob Guise.

Ruth L. Alford                     Harassment Complaint                     June 2020

**Question #1:  Where did the alleged harassment incident{s} take place?**

South Park Rail, Second Floor

Conversation #2:   Manager's Office ~ Room #208 ~ In Bob's Office

Conversation #3:   Administrative Office ~ Room #206 ~ Doorway Entry of My Office

**Question #2:  List the date{s} and time{s} the alleged harassment incidents occurred:**

Thursday, June 11, 2020 @ Approximately 2:40 ~ 2:55 PM

**Question #3:  Is this alleged behavior ongoing:**

Not at this present time.

**Question #4:  Identify any witnesses / or other persons who may have relevant information regarding the alleged harassment:**

**The following supervisors were in their office or office next door at the time of the incident:*

Brian McDonough {842.3505} and Eric Witt {842.3576} ~ Room 205
Ricardo Torres {842.3506} ~ Room 203

**Question #5:  Did you discuss the alleged harassment with anyone?  If yes, with whom and when:**

Yes, I shared the incident with Dave and Ricardo prior to leaving work.  Darren was notified from my home.

Immediately upon completion of the disciplinary forms that I was typing.  I went to see Ricardo to drop of the documents and inquired if he had heard the conversation. He said, "He did not.  He was talking with someone in his office."

At the time of the incident Dave was not in the office.  Darren and Dave arrived back at our location just as the incident had ended.  To my knowledge neither one was a witness to the incident or acknowledged hearing the conversation as they arrived on the second floor to their offices or alternate destination.

3

Ruth L. Alford                    Harassment Complaint                    June 2020

**Question #6 ~ Did anyone see you immediately after the alleged harassment?  If yes, whom and where:**

Yes, Dave Hooper and Ricardo Torres in their office, Room 203.

**Question #7 ~ Are you aware of any other employees {current or former" who you believe have been subjected to the same or <u>similar</u> type of treatment by the alleged harasser?**

Yes, Dave Hooper.

**Question #8 ~ Did you report the incident{s} to anyone in management?  If yes, to whom and when:**

Yes, Darren was notified shortly after I arrived home from work on the day of the incident.  I first called him at 4:47 pm, he then texted back at 4:48 pm, stating his unavailability right then.  I texted back at 4:50 pm, letting him know that I had an urgent matter that I needed to address with him.

Darren called back at 4:59 pm, we spoke for approximately 15 minutes.

**Question #9:  How has the alleged harassment affected you:**

The statements made within this document will never allow me to express the fullness of how this incident has affected me now, overall and in the future.  Unfortunate for me, I will never forget George Floyd's name and how he died.

I'm overwhelmed with additional emotions, exhaustion, anxiety and panic attacks just thinking about having to come to work and while being at work daily.  I'm sick to my stomach daily as I sit back and watch everyone resume a normal work life except me.

I have numerous thoughts and concerns regarding being set up at work or outside of work being falsely accused of an incident and arrested by our local police authorities. I'm trying to keep from thinking negative thoughts every time I see a police officer regardless of my location.

Enough is enough!  Especially dealing with the pandemic, quarantining, protesting, rioting and the recent and prior deaths including Breonna Taylor who was shot and killed in her home while she slept.  Never in my wildest dreams would I have ever dared to

4

Ruth L. Alford                     Harassment Complaint                     June 2020

believe that Bob would ever say the things that he said or behave the manner that he did at least not with me. But I have learned otherwise personally and by the comments shared by other workers who know him very well.

Another puzzling issue, Bob had the audacity to stop speaking to me with an attitude as if I verbally insulted, assaulted and harassed him instead of him harassing me. He is now speaking to me as if nothing has ever happened. WOW!

**Question #10: Has the alleged harassment affected your job in any way?**

Where do I begin? For the past 10 years and to date, I have not had a great work experience. I have been stressed, depressed, oppressed, suppressed and accused which has led to numerous health issues to date.

I'm overwhelmed with additional emotions, exhaustion, anxiety and panic attacks just to name a few just thinking about having to come to work and while being at work. It's a never-ending thought process regarding the incident along with having to see the news or hear about negative or encouraging commercials related to George Floyd's death.

Additionally, my emotions continue to be out of control with crying spells as I have tried to complete this form and as I have had to continue to watch and listen to Bob and another supervisor have discussions regarding the ATU 1342 employee who was suspended for two days and directed to report to EAP after a verbal altercation ensued one week after my incident on Thursday, June 18, 2020.

I have numerous thoughts and concerns of who may attempt to retaliate against me at my own location and various locations throughout the company without naming any departments and names at this present time.

I have numerous thoughts and concerns regarding being set up and falsely accused of an incident and arrested by our local police authorities.

**Question #11: Have you kept any notes or other evidence relating to the alleged incident{s}?**

I have an email supporting that Bob stopped speaking to me with an attitude immediately after the incident. He emailed me and cc'd Darren Haag and Don Clapp.

RE:  *Alford v. Robert W. Guise and Niagara Frontier Transit Metro System, Inc.*
*Civil Action #: 121:-cv-00737 JSL*

# Exhibit
# 'C'

## Statement From Defendant Guise

## June 12, 2020

6/12/2020

Last night before first shift quitting time, Ruth came into my office and informed me that she has been setting up a placemat at Allen for patrons to eat at the table on street level. This was being done while she was here on OT (weekends) doing sanitizing activities.

I told her NOT to continue to do this as it promotes or encourages people to loiter and eat in the station.

She told me "why" they do it anyway. I told her that puts our employees and our officers in a position of confrontation with these folks that could turn into an altercation or aggressive thing like the Floyd thing and I was discouraging this from happening.

She continued to think her activity was OK and took offence to me bring up the Floyd thing whereas I told her she wasn't seeing my point and was making this something about race. At that point I told her this has nothing to do with color or race. She didn't want to hear any of that she continued with the knee on a man's neck and how that compares to what she was doing (setting a placemat). I left it with you are encouraging something that isn't allowed, and it could lead to trouble and I needed her to stop.

This is my interpretation of events as I'm sure she will have a different outlook as she didn't want to hear anything. I thought my asking her to stop was enough, but she continued saying and thinking it was OK because folks were already doing this even without her place setting.

Robert Guise,

*RE:  Alford v. Robert W. Guise and Niagara Frontier Transit Metro System, Inc.*
*Civil Action #: 121:-cv-00737 JSL*

# Exhibit
# 'D'

Plaintiff Alford

Employee Injury Report

September 13, 2020

Log No. 2006-15                    **EMPLOYEE INJURY REPORT**
NFTA- 0910
REV- 04/08

## THE FOLLOWING SECTION IS TO BE COMPLETED BY THE EMPLOYEE

Last Name: ALFORD                    First Name: RUTH                    MI: L
Address: 12 OLCOTT PLACE             City: CHEEKTOWAGA          Zip Code: 14225
Home Phone: N/A          Cell Phone: 716.816.5881          D.O.B. 11/06/1964
Work Location: SOUTH PARK RAIL    Job Classification: SENIOR CLERK A    Work Hours: 730A - 330P
Emp. No. 4668              R.D.O. SUNDAY/SATURDAY    Seniority Date: 09/04/2001
Date of Accident: JUNE 11, 2020    Day of the week: THURSDAY    Time of Accident: 2:40  AM (PM)
Reported to: DARREN HAAG                          Time Reported: 4:59    AM (PM)
Describe in detail what happened to cause the accident:    **SEE ATTACHED PARTIAL REPORT.**

**FULL REPORTS ON FILE WITH THE DEPT. OF EEO.**

Body part(s) injured AREAS OF THE BRAIN - Mind, Will & Emotion Did you go to the hospital: Yes___ No X
Location of Injury: Left__ Right__ Upper__ Lower__ Other__ Specify __
Nature of injury (bruise, cut, burn, strain, etc.) Stress, Depression and Out of control Emotions.
Did you see a doctor: Yes X  No___    Doctors Name: Dr. Cynthia Liu-Chen
Address: 85 High Street - Buffalo, NY 14203          Phone No.: 716.857.8767
Witness Name: NAMES ON FILE w/NFTA, DEPT. OF EEO          Phone No.:
(If an employee) Work location   SOUTH PARK RAIL          Employee No.
It is a crime punishable as a Class E felony under New York State law for a person to knowingly make a false statement,
which the person does not believe to be true, with intent to defraud a public benefit corporation.
Employee's signature: _Ruth L. Alford_
Date: SEPTEMBER 13, 2020

## THE FOLLOWING SECTION IS TO BE COMPLETED BY THE EMPLOYEES IMMEDIATE SUPERVISOR

Authority vehicle involved: Yes___ No X    Vehicle No._____
Is the employee still working: Yes X  No ___    First day off _____
Why did the accident happen? What conditions and/or employee actions contributed to this accident?
(Look for two or more causes: a condition, action, work practice, procedure, circumstance, etc.)

What was done to correct the conditions related to this accident? Be as specific as possible.

_Darren Haag referred to HR/EEO on 9/14/2020_

Supervisor's signature:                    Print Name:

**FOR INTERNAL USE ONLY**                    Recordable: Yes / No
Date Employee Returned To Work              Lost Time Accident: Yes / No

*RE:  Alford v. Robert W. Guise and Niagara Frontier Transit Metro System, Inc.*
*Civil Action #: 121:-cv-00737 JSL*

# Exhibit

# 'E'

## NFTA

## Harassment in the Workplace

## September 1, 2016

**NFTA**

Niagara Frontier Transportation Authority
*Serving Buffalo Niagara*

# Harassment in the Workplace

**I   PURPOSE**
The purpose of this policy is to state the Authority's position on harassment in the workplace and to ensure that all employees are treated professionally and with dignity.

**II   APPLICABILITY**
This policy applies to all NFTA/NFT Metro employees, contractors, sub-contractors, and vendors doing business with the NFTA. This policy applies to conduct that occurs in the workplace, and to conduct that occurs at any location which can be reasonably regarded as an extension of the workplace, such as any field location, or any business related social function where NFTA/Metro employees are gathered.

**III  POLICY**
**A.   Definition:** Harassment is a form of employment discrimination that is prohibited by Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act, and the New York State Human Rights Law. Harassment is unwelcome conduct that is based on the following protected characteristics: age, race, creed, color, sex, religion, national origin, disability, predisposing genetic characteristics, marital status, military status, sexual orientation, and/or any other legally protected characteristic or trait.

**B.   Prohibited Conduct:** Harassing behavior includes but is not limited to the following, when based upon any of the characteristics listed in (A) above.

1. Physical Harassment- physical assault, threats of physical harm, invading an individual's physical space, offensive gestures, or damaging personal property.

2. Visual or Verbal Harassment-threats, insults, name-calling, derogatory letters, jokes, gag-gifts, comments, or pictures, whether written or displayed electronically. Words or actions that demean, intimidate, or stigmatize an individual based upon any of the characteristics listed in (A) above are also prohibited.

3. Sexual Harassment-Unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature when:
   a. Submission to the conduct is either an explicit or implicit term or condition of employment; or
   b. Submission to or rejection of the conduct is used as a basis for an employment decision affecting the person subjected to the conduct.
   c. The conduct has the purpose or effect of unreasonably interfering with an affected person's work performance, or creating an intimidating, hostile, or offensive work environment.

The harasser can be a co-worker, victim's supervisor, a supervisor in another department or location, or a vendor, contractor, or sub-contractor doing business with the NFTA.

Petty slights, offhand comments, and isolated incidents will not rise to the level of harassment unless they are extremely serious. To be unlawful, the conduct must create a work environment that is intimidating, interferes with the affected person's work performance, or is hostile or offensive to reasonable people.

**C.   Third Party Harassment:** This policy also applies to third party harassment. Third party harassment is unwelcome behavior based upon any of the characteristics listed in (A) above that is not directed at the employee, but is present in the workplace, and interferes with an employee's ability to perform his or her duties. Harassment in any form will not be tolerated, even in cases where the individual welcomes or accepts the behavior. Individuals witnessing harassing behavior that they find offensive, even though it is not directed to them, may file a formal harassment complaint.

**D.   Reporting Incidents of Harassment:** Incidents of harassment should be reported immediately to your supervisor, another management employee in your department, to the Office of Human Resources, or to the Office of Equal Employment Opportunity/Diversity Development, 181 Ellicott Street, Buffalo, NY. 855-7489/7286. If your immediate supervisor or other department manager is the individual responsible for the harassment, or has failed to satisfactorily address your harassment complaint after being afforded a reasonable period of time to do so, you should contact the Office of Human Resources and/or the Office of Equal Employment Opportunity/Diversity Development about your harassment complaint.

**E.   Complaint Procedure:** Complainants are urged to consult with the Office of Equal Employment Opportunity/Diversity Development, to file a formal complaint with this department if believed necessary, and to use informal methods of resolution prior to filing a complaint of harassment with the New York State Division of Human Rights, the U.S. Equal Employment Opportunity Commission, or other outside agency. The Office of Equal Employment Opportunity/Diversity Development will conduct investigations into allegations of harassment. Confidentiality will be maintained to the extent possible, and will be disclosed only to persons and/or to agencies directly involved in the investigation. At the conclusion of an investigation, the Office of Equal Employment Opportunity/Diversity Development will issue a letter to each Complainant to advise of the outcome of the investigation.

**F.   Prohibition Against Retaliation:** An employee may not be terminated, demoted, harassed, or otherwise retaliated against for opposing a discriminatory practice, filing a complaint of harassment, or for participating in an investigation related to a complaint of harassment.

**G.   Penalties:** The Authority considers harassment to be a form of employee misconduct. Individuals who engage in harassing behavior, including managerial and supervisory personnel who knowingly allow such behavior to continue, will be subject to disciplinary action, up to and including termination. Persons who intentionally file false complaints under this policy, or who intentionally provide false information in connection with an investigation into an allegation of harassment may be subject to disciplinary action, up to and including termination.

| | | | |
|---|---|---|---|
| Kimberley A. Minkel | 9/1/16 | Sister Denise A. Roche | 9/1/16 |
| Kimberley A. Minkel<br>Executive Director | Date | Sister Denise A. Roche<br>Chair | Date |

*RE:  Alford v. Robert W. Guise and Niagara Frontier Transit Metro System, Inc.*
*Civil Action #: 121:-cv-00737 JSL*

# Exhibit

# 'F'

## NFTA

## Equal Opportunity in Service Employment

## September 1, 2016



Niagara Frontier Transportation Authority
*Serving Buffalo Niagara*

# Equal Opportunity in Service and Employment Policy Statement

The Niagara Frontier Transportation Authority (NFTA) is committed to providing equal access and opportunity in the provision of services and equal employment opportunity for all employees and applicants for employment regardless of race, color, religion, national or ethnic origin, age, alienage, citizenship, ancestry, gender, genetic disposition or carrier status, sexual orientation, marital status, liability for service in the Armed Forces of the United States, arrest/conviction record, or disability. All personnel, including management personnel, share in the responsibility to ensure compliance with the NFTA's Equal Opportunity Policy.

This policy applies to all employees, applicants for employment, patrons, contractors and sub-contractors doing business with the NFTA.

Successful implementation of equal employment opportunity goals will provide benefits through fuller utilization and development of previously underutilized human resources.

It is a violation of this policy for any employee, contractor, or sub-contractor doing business with the NFTA to engage in discrimination against or to retaliate against an employee, or applicant for employment for filing a complaint under this policy, or for participating in the investigation of a complaint.

The Authority's policy incorporates, as applicable, the nondiscrimination and affirmative action obligations set forth in federal and state law, including, but not limited to: Executive Order 11246, as amended; the Equal Pay Act of 1963, as amended; Titles VI and VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the Age Discrimination in Employment Act of 1967, as amended; Sections 503 and 504 of the Rehabilitation Act of 1973, as amended; the Americans with Disabilities Act of 1990; the New York State Human Rights Law, as well as the policies of the Board of Commissioners of the Niagara Frontier Transportation Authority.

To further this policy, the NFTA:

- Ensures that all personnel actions, including but not limited to: recruitment, hiring, termination, compensation, transfer, layoff, recall, benefits, promotion, demotion, and selection for company sponsored training, will be administered without regard to race, color, religion, national or ethnic origin, age, alienage, citizenship, ancestry, gender, genetic disposition or carrier status, sexual orientation, marital status, liability for service in the Armed Forces of the United States, prior arrest record, or disability. Managers and Supervisors will be evaluated for their compliance with the NFTA'S EEO program and goals.

- Bases decisions affecting service such as access, seating, routing, scheduling and quality of service to further the principles of Equal Opportunity, and without regard to: race, color, religion, national or ethnic origin, age, alienage, citizenship, ancestry, gender, genetic disposition or carrier status, sexual orientation, marital status, liability for service in the Armed Forces of the United States, prior arrest record, or disability.

- Has established internal procedures for processing and promptly investigating complaints received under this policy. Employees, applicants for employment, patrons, contractors or sub-contractors who believe that they have been discriminated against in a manner prohibited by the NFTA's Equal Opportunity Policy should contact their supervisor, or the Manager of Equal Employment Opportunity/Diversity Development at 181 Ellicott Street, Buffalo NY 14203; telephone 716-855-7489.
  All applicants and employees have the right to file complaints alleging discrimination with the appropriate official.

- Makes reasonable accommodation for an individual's disability and religious beliefs and practices, to the extent that the accommodation does not create an undue hardship for the Authority. Persons who wish to request reasonable accommodation for these reasons should contact Dejuan A. Hardy, Manager of Equal Employment Opportunity/Diversity Development, 181 Ellicott Street, Buffalo NY 14203; telephone 716-855-7489.

This policy statement will be distributed to all employees and will be made available via posting on bulletin boards in conspicuous locations at all NFTA properties. Questions about this policy should be addressed to Dejuan A. Hardy, Manager of Equal Employment Opportunity/Diversity Development, 181 Ellicott Street, Buffalo NY 14203; telephone 716-855-7489. The responsibility for implementation of the NFTA's EEO program and ensuring compliance with this policy is assigned to the Manager of Equal Opportunity/Diversity Development.

Equal Opportunity is not only the law, but is in keeping with the NFTA's commitments to valuing diversity and to operating with integrity. A violation of the Authority's Equal Opportunity Policy is a form of employee misconduct that undermines the integrity of the employment relationship and will not be condoned. Any substantiated violations of this policy will result in discipline up to and including termination of employment. We personally stand behind the principles stated herein, and expect each employee to comply with this policy.

Note: The NFTA has also issued an Affirmative Action Equal Opportunity Policy Employment Protection Policy and other policies and procedures condemning discrimination. All employees are expected to familiarize themselves and comply with these policies and procedures.

| | | | |
|---|---|---|---|
| *Kimberly A. Minkel* | 9/1/16 | *Sister Denise A. Roche* | 9/1/16 |
| Kimberley A. Minkel | Date | Sister Denise A. Roche | Date |
| Executive Director | | Chair | |

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

RUTHETTA L. ALFORD

                        Plaintiff,

                                            Civil Action No.:
v.                                          1:21-CV-00737-JLS-LGF

NIAGARA FRONTIER TRANSIT METRO SYSTEM, INC.
and
ROBERT W. GUISE

                        Defendants.

_____

## **LOCAL RULE 56(2)(1) STATEMENT UNDISPUTED MATERIAL FACTS**

### **Plaintiff's Response To Statement Undisputed Material Facts**

4. On June 11, 2020, Defendant Robert W. Guise started a verbal altercation with the Plaintiff

   Ruthetta L. Alford accusing me of being the reason that the homeless and etc. are entering

   into the rail stations to eat, drink, loiter, and etc.

   ▪ Prior to the start of the verbal altercation Defendant Guise visited my office inquiring

      about the plastic bags that he was storing up in his office.  I replied, "I needed the bags

      and used them."  I happily followed behind Defendant Guise into the hallway sharing

      with him that "the Allen-Medical Station was my signature station.  I put a cloth on the

      table as a centerpiece.

- He entered into his office and stood between the two desks facing me as I stood in the entryway of his office and started yelling at me in a loud voice making false accusations against me. At this point, I am shocked and blindsided. I left Defendant Guise's to avoid arguing with him and I returned to my office upset and began working immediately.

- During the conversation that I had with Defendant Guise, he never mentioned George Floyd's name or death. Nor did he tell me "<u>not to put a cloth on the table anymore.</u>"

5. On June 11, 2020, I spoke with Manager, Darren Haag, from home. He was already aware of the incident. Supervisor David Hooper and/or Supervisor Ricardo Torres reported the incident to him on my behalf. Both supervisors were furious after I shared the incident and witnessed my first emotional breakdown.

- On June 12, 2020, I, Plaintiff Alford reported to work only to process the assignments that needed to be emailed to payroll. Following the completion of emailing. I prepared the complaint which took me approximately and hour and a half. I left work for the rest of the day.

8. On June 11, 2020, Defendant Guise never asked me or told me not to put a cloth/rag on the table. Nor did he mention George Floyd's name while I was in his entryway, or express any type of concern for our Rail employees who clean the stations or Transit Police Officers.

- On June 12, 2020, I, Plaintiff Alford reported to work only to process the assignments that needed to be emailed to payroll. Following the completion of emailing, I prepared the complaint which took me approximately and hour and a half. I left work for the rest of the day.

9.  On June 11, 2020, Defendant Guise returned to my office, Plaintiff Alford's, blocking my

entryway and starting to vocalize his thoughts and opinions about George Floyd's death and past

life.  I, Plaintiff Alford am shocked and blindsided again.

- Defendant Guise began making the following negative comments about George Floyd.

  - I can't remember the first comment, I believe it was related to the counterfeit twenty-dollar bill.

  - George Floyd is now being made a saint.

  - He pulled a gun on a pregnant woman.

I, Plaintiff Alford began questioning Defendant Guise as to where did he get this

information from and what does it have to do with me putting a cloth on a table as a

centerpiece?

  - Defendant Guise's final comments to me were, "Well, as far as we know this could be a hoax by the media.  George Floyd may not even be dead."  Defendant Guise returned to his office.  This was two days after Mr. Floyd's funeral.

  - I, Plaintiff Alford, am disgusted and very upset.  I was trapped in my office with no way out while Defendant Guise taunted me with his thoughts and opinions of George Floyd.

  - My only way to exit my office was to get near Defendant Guise and asked to be let out of my office or brush by him and be accused of assaulting him.

  - This is the second instance Defendant Guise created a hostile work environment.

12. Defendant Guise since becoming a Rail Superintendent {Dept. #54}, Rail Manager {Dept. #50, and prior positions as an ATU 1342 member had numerous issues with his peers.

- Defendant Guise and I, Plaintiff Alford had a great networking relationship while he supervised as Rail Car Vehicle Maintenance Superintendent {Dept. #54}.

- Defendant Guise and I, Plaintiff Alford also had an awesome networking relationship when he became Rail Maintenance Manager {Dept. #50}.

  - Defendant Guise within the past five to six years began to become very disgruntled with the management team at MTC Headquarters and the Rail Yards & Shops.

  - David Hooper was a victim of Defendant Guise and never filed an internal complaint against him. It was a well-known fact to the management team at the Rail.

  - David Hooper was constantly embarrassed, humiliated, and harassed by Defendant Guise in his office in front of Mr. Hooper's staff, in rail staff meetings, as well as the other supervisors, and ATU 1342 employees and union officers.

  - David Hooper was very troubled by Defendant Guise's actions on a daily to weekly basis when he and Defendant Guise worked.

  - Defendant Guise also displayed disgruntled and insulting behaviors with other staff members with whom he did not agree or share his opinion. He stopped attending or was asked not to attend the Managerial Staff Meetings held by Tom George, Surface Transportation Director.

14. I, Plaintiff Alford always had intentions on filing an Employee Injury Report. I was delayed in filing it due the length of time it took to complete the Harassment paperwork. I received the paperwork near the end of June 2020 and finally submitted on August 3, 2020.

- Following the incident on Thursday, June 11, 2020, I, Plaintiff Alford suffered daily mentally and emotionally especially while at work and home.
- Additionally, I was unable to continue to keep up with my daily workload. Manager Darren Haag was made aware of my emotional and mental breakdowns. I constantly had to excuse myself to the ladies' room and/or go outside to get fresh air because I could not breathe.
- I was very uncomfortable being at work daily having to see or know that Defendant Guise was at work and two doors down.
- I, Plaintiff Alford found myself uncontrollably crying in public on street corners and at bus stops while waiting for my bus to go home.

16. I, Plaintiff Alford after working with the recruiter from FHE Health for approximately two to three months, I finally agreed to enter into treatment. The recruiter was referred to me by Union President, Jeff Richardson as an International Board Member on Thursday, June 11, 2020.

- I, Plaintiff Alford also met with the Rail Steward after viewing FHE Health's Flyer posted in our union board. I also watched the video that was posted on President Richardson's Facebook page.
- I, Plaintiff Alford also completed four sessions with our EAP Provider and shared the information about FHE Health with my therapist.

- I, Plaintiff Alford finally reached out to the FHE recruiter only to learn that she was the International Board Member.  She focused on getting me into treatment versus focusing on my harassment complaint.

- I, Plaintiff Alford was also scheduled for a counselling session on Monday, June 15, 2020.  Due to a cellular network glitch, I was unable to meet with the therapist by phone.  I received an email stating; the therapist would be out of town until the end of June 2020.  When the end of June came about, my mind was completely dysfunctional, brain scattered, and struggling to function.

17.  Per all of my conversations with the Worker's Compensation Board representatives and examiners, I was told that if my case was closed, only I or an attorney could open the claim at any time.  To date, I am constantly in contact with the Worker's Compensation Board ensuring that I submit the requested documents that have not been submitted to the WCB by FHE Health.

- I, Plaintiff Alford have submitted the necessary Consent Release Forms for FHE Health to release the documents to all requesting parties,  I have had much difficulty with this process for the past year.

18.  I, Plaintiff Alford started the process of reaching out to the EEOC by phone in November 2020.  Due to returning home from FHE Health, readjusting to be back home, and suffering from anxiety, panic attacks, major depression, PTSD, and trauma, it was very difficult for me to function.

19.  I, Plaintiff Alford on or about March 3, 21, was awarded the Right To Sue My Employer.  I was instructed to save all documents related to my case and I had 90 consecutive days to file my complaint.  They decided that a full investigation was not necessary.

20. I, Plaintiff Alford did refuse to down grade my mental health issues from Worker's Compensation to Disability Leave. I was previously told that I had a certain time period to file for Disability Leave. When Ms. Novo's letter was received, the deadline to submit the paperwork was past the open window.

22. I, Plaintiff Alford worked with the NFTA Worker's Compensation Dept. receiving internal job postings in order to return to work. Due to my ongoing mental health issues, it has prevented from returning to work at the Rail Yards and Shops knowing that Defendant Guise is still working and has not retired as scheduled January 2021. Also, I had numerous concerns and fears of in another position throughout the company to be retaliated against. My employment was no longer welcomed with my employer Defendant NFT METRO, and the first opportunity given I would be retaliated against by being terminated.

- I, Plaintiff Alford had two horrible nightmares and constant dreams about returning to work. These nightmares are on file with my out-patient treatment provider.

  - I dreamed that former ATU 1342 Union President, Vince Crehan attempted to shoot me outside of Rite Aid Pharmacy in my neighborhood.

  - I dreamed that I returned to work at the rail. I was working third shift. While on my lunch and napping, Defendant Guise entered into my office and blew on my face to see if I was awake. I didn't respond. Defendant Guise sexually assaulted me vaginally with his right hand.

Respectfully submitted,

_Ruthetta S. Alford_
Ruthetta L. Alford
Plantiff, Pro Se

Revised 05/01 WDNY

## AFFIRMATION OF SERVICE

**(If you are _not_ having your signature notarized, use this form)**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_Ruthretta L. Alford_,

Plaintiff(s),

v.

_NFTA-Metro et al_,

Defendant(s).

AFFIRMATION OF SERVICE

_121_ -CV- _00737_ - JSL-LGF

I, _(print your name)_ _Ruthretta L. Alford_ served a copy of the attached papers _(state the name of your papers)_ _Motion for Dismal/Summary Judgment_

_____ upon all other parties in this case
by mailing _____ by hand-delivering ___X___ _(check the method you used)_.
these documents to the following persons _(list the names and addresses of the people you served)_ _NFTA-Metro_
_Wayne Gradl, Esp_

on _(date service was made)_ _____

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information and belief.

Executed on _1/14/2022_        _Ruthretta S. Alford_
           _(date)_                _(your signature)_

*Ruthetta L. Alford*
*12 Olcott Place ~ Cheektowaga, NY 14225*
***Cell:*** *716.816.5881 / **Email:** alfordrl@gmail.com*

January 14, 2022

Honorable John Sinatra, Jr.
Honorable Leslie G. Foschio
U. S. District Court
2 Niagara Square
Buffalo, NY  14202

**RE: *Alford v. Robert W. Guise and Niagara Frontier Transit Metro System, Inc.***
**Civil Action #: *121:-cv-00737 JSL-LGF***

Dear Honorable Sinatra, Jr. and Honorable Foschio:

I am requesting the *Motion To Dismiss/Summary Judgment/* filed by Wayne R. Gradl, Esq. on behalf of the defendants' NFT Metro System, Inc. and Robert W. Guise be dismissed and this case be awarded a trial.

Also, the cover letter dated, January 13, 2020, submitted with the above court documents is dated prior to the verbal and racial harassment incident on Thursday, June 11, 2020.  The date on the cover letter is unrelated to *Civil Action #: 121:-CV-00737 JSL* issued on Wednesday, June 15, 2021.

I have also enclosed for your review Affidavits/Exhibits {A to F} that will support my claims and actions related to me filing both complaints of verbal and racial harassment which was the breaking point for me causing me to suffer a mental health breakdown immediately after the incident and in need of mental health treatment as the days, weeks, and months went by due to the above listed incident.

Thank you for your time and consideration in this matter.

Sincerely,

Ruthetta L. Alford
Plaintiff, Pro Se

cc: Wayne R. Gradl, Esq.
    NFTA-METRO