UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RUTHETTA L. ALFORD,

                                        REPORT
                    Plaintiff,           and
                                        RECOMMENDATION
            v.

NFTA-METRO, and                                    21-CV-737JLS(F)
ROBERT W. GUISE,

                    Defendants.
_____

APPEARANCES:        RUTHETTA L. ALFORD, *Pro Se*
                    12 Olcott Place
                    Cheektowaga, New York  14225

                    DAVID J. STATE, ESQ.
                    GENERAL COUNSEL
                    NIAGARA FRONTIER TRANSPORTATION AUTHORITY
                    Attorneys for Defendants
                    WAYNE R. GRADL, of Counsel
                    181 Ellicott Street
                    Buffalo, New York  14203

## JURISDICTION

    This case was referred to the undersigned by Hon. John L. Sinatra, Jr., on

October 29, 2021, for all pretrial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the court on

Defendants' motion for summary judgment (Dkt. 5), filed October 28, 2021.


## BACKGROUND

    Plaintiff Ruthetta L. Alford ("Plaintiff"), an African-American woman proceeding

*pro se*, commenced this action on June 15, 2021, alleging against Defendants Niagara

Frontier Transportation Authority ("NFTA"), and Robert W. Guise ("Guise") (together, "Defendants"), employment discrimination based on race and color in violation of Title VII of the Civil Right Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), and New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*. ("NYSHRL").  Defendants never filed an answer, but on October 28, 2021, filed the instant motion for summary judgment (Dkt. 5), attaching the Supporting Affidavit of Wayne R. Gradl, Esq. (Dkt. 5-1) ("Gradl Affidavit"), exhibits A through S (Dkts. 5-2 through 5-20) ("Defendants' Exh(s). __"), the Local Rule 56(2)(1) Statement of Undisputed Material Facts (Dkt. 5-21), Defendants' Memorandum of Law in Support of Motion for Summary Judgment (Dkt. 5-22), and a supplement of unpublished authorities (Dkt. 5-23).  An amended memorandum of law was also filed on October 28, 2021 (Dkt. 6) ("Defendants' Memorandum").[1]  On January 14, 2022, Plaintiff filed Plaintiff's Response to Defendants' Memorandum of Law in Support of Motion for Summary Judgment (Dkt. 12) ("Defendant' Response").  On February 4, 2022, Defendants filed Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment (Dkt. 14) ("Defendants' Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED.


## FACTS[2]

Plaintiff Ruthetta L. Alford ("Plaintiff" or "Alford"), an African-American woman, commenced working for Defendant Niagara Frontier Transit Authority ("NFTA") in

---

[1] Defendants' Memorandum is essentially to the original memorandum but includes an additional page 12 that was omitted from the original memorandum.
[2] Taken from the pleadings and motion papers filed in this action.

September 2001 as an Office Clerk A, receiving several promotions to her final position as a Senior Clerk A, the position Plaintiff held when she retired effective as of August 1, 2021.  Plaintiff's various positions held throughout her tenure with NFTA were part of the bargaining unit of employees represented by Amalgamated Transit Union Local Union 1342 ("the Union").  At all times relevant to this action, Defendant Robert W. Guise ("Guise"), was Plaintiff's immediate supervisor.

On June 11, 2020, Plaintiff was working at the NFTA's Allen Street-Medical Light Rail Station ("Allen Street Station") when she had a verbal exchange with Guise ("the incident" or "the exchange").  The exchange, initiated by Guise, occurred in Plaintiff's office concerning plastic bags.  Plaintiff does not allege there was anything offensive about the verbal exchange at first, and asserts that after the exchange commenced, she followed Guise out of her office into the hallway to Guise's office where Plaintiff shared with Guise that Plaintiff was proud of her work at the Allen Street Station which Plaintiff considered her "signature station."  Plaintiff further advised Guise she routinely placed a cloth as a centerpiece on a table ("tablecloth") at the Allen Street Station for décor. Guise then began yelling at Plaintiff that such conduct would encourage people to enter the Allen Street Station to eat, to which Plaintiff responded by asking how Guise was suggesting Plaintiff was encouraging the public to eat in the station when, for years, the public has been eating in the NFTA's Metro stations, as well as eating on the buses and smoking on the rail system.  Guise, however, continued to blame Plaintiff, causing Plaintiff to return to her office to avoid further verbal assaults from Guise.

Plaintiff maintains Guise then stood in the doorway to Plaintiff's office and continued to berate Plaintiff about the tablecloth and also began commenting about

George Floyd ("Floyd"), asserting Floyd was not a saint, but had pointed a gun at a pregnant woman, and that it was quite possible Floyd was not dead, but that the media was perpetuating a lie.  Plaintiff inquired as to the relevancy of Floyd's death to Plaintiff's placing a tablecloth on a table at the Allen Street Station, asking whether Guise believed Plaintiff should be arrested by a Causasian police officer and shot or suffocated to death.  The conversation ended and Guise left Plaintiff's office.  Plaintiff then completed some paperwork and left her office to speak with non-parties David Hooper ("Hooper") and Ricardo Torres ("Torres") about Plaintiff's verbal exchange with Guise.  While speaking with Hooper and Torres, Plaintiff began crying hysterically and was unable to continue the conversation.  Hooper and Torres advised Plaintiff to speak with NFTA Rail Manager Darren Haag ("Haag"), a nonparty.  Hooper and Torres, on Plaintiff's behalf, notified Haag of the incident before Haag left work that day.  As Plaintiff was leaving work that day, she glanced into Guise's office and observed Guise "with a huge grin on his face as he sat at his desk."  Plaintiff's Response at 5.

On June 12, 2020, Plaintiff spoke with Haag who suggested Plaintiff file a formal complaint regarding the incident.  Also on June 12, 2020, Guise drafted a statement ("Guise's Statement"),[3] admitting he mentioned Floyd when conversing with Plaintiff on June 11, 2020, in the context of directing Plaintiff not to put a tablecloth or place setting on the table at the Allen Street Station to avoid encouraging loitering and minimize the possibility of a confrontation that could lead to an incident like the one that resulted in Floyd's death.  Guise further stated Plaintiff refused to listen to Guise and likely would interpret his comments as racially offensive.  *Id*.

---

[3] Defendants' Exh. F (Dkt. 5-7).

On August 3, 2020, Plaintiff filed a formal Harassment Complaint against Guise with the NFTA's Equal Employment Opportunity/Diversity Development Department ("EEO/Diversity Department") ("NFTA Complaint").[4]  The EEO/Diversity Department completed its investigation on August 17, 2020, when EEO/Diversity Department Manager DeJuan Hardy ("Hardy") sent Plaintiff a letter ("Hardy Letter"),[5] explaining, *inter alia*, that Guise was "re-instructed regarding acceptable behavior in the workplace," and the matter was then closed.  By letter dated September 2, 2020 ("September 2, 2020 Letter),[6] the EEO/Diversity Department directed Guise to schedule sensitivity training, which was considered appropriate to address Plaintiff's NFTA Complaint because Guise had not previously been the subject of a harassment complaint since commencing employment with the NFTA in 1983.

Plaintiff wanted Guise to be terminated for making racially insensitive comments which Plaintiff maintains subjected Plaintiff to a racially hostile work environment.  On September 13, 2020, after learning Guise was not being terminated but was, instead, only required to attend counseling, Plaintiff filed an Employee Injury Report ("Injury Report"),[7] and filed for New York State Workers' Compensation ("Workers' Compensation") ("Workers' Compensation Claim"), claiming that while performing her job on June 11, 2020, she sustained an emotional injury resulting in stress, and depression for which she sought medical treatment from one Dr. Cynthia Liu-Chen.  On September 27, 2020, Plaintiff commenced a medical leave of absence for mental health issues.  Defendants' Exh. B (Dkt. 5-3).  On February 8, 2021, the Workers'

---

[4] Defendants' Exh. E (Dkt. 5-6).
[5] Defendants' Exh. G (Dkt. 5-8).
[6] Defendants' Exh. H (Dkt. 5-9).
[7] Defendants' Exh. K (Dkt. 5-12).

Compensation Board issued an administrative decision ("Administrative Decision") denying Plaintiff's Workers' Compensation Claim based on Plaintiff's failure to submit the required supporting medical documentation for her claimed injury.[8]

On February 24, 2021, Plaintiff filed an administrative employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), and New York State Division of Human Rights ("EEOC Claim").[9]  By letter dated On March 19, 2021 ("EEOC Letter"),[10] the EEOC advised Plaintiff its investigation into the EEOC claim was concluded but, based on the investigation, the EEOC was unable to conclude the evidence established a Title VII violation and the EEOC Claim was being dismissed.[11]

By letter dated July 1, 2021 ("July 1, 2021 Letter"),[12] NFTA Director of Human Resources Karen Novo ("Novo") advised Plaintiff that based on the Administrative Decision denying Plaintiff's Workers' Compensation Claim, Plaintiff was no longer considered to be on a Workers' Compensation leave but that Plaintiff could pursue a disability leave pursuant to her rights set forth in § 8-3.2 of the Union's collective bargaining agreement relevant to Plaintiff's employment.  By letter dated July 8, 2021 ("July 8, 2021 Letter"),[13] Plaintiff advised Novo that Plaintiff was taking steps to reopen her Workers' Compensation benefits claim.  On July 14 and 19, 2021, Defendant NFTA received from the Union e-mails[14] advising Plaintiff had opted for retirement effective August 1, 2021.  In correspondence dated July 19, 2021, NFTA provided Plaintiff with

---

[8] Defendants' Exh. L (Dkt. 5-13).
[9] Defendants' Exh. B (Dkt. 5-3).
[10] Defendants' Exh. M (Dkt. 5-14).
[11] Included with the EEOC Letter was a Notice of Right to Sue.  (Dkt. 5-14 at 3).
[12] Defendants' Exh. N (Dkt. 5-15).
[13] Defendants' Exh. O (Dkt. 5-16).
[14] Defendants' Exh. P (Dkt. 5-17).

information concerning her available retirement benefits, and designating Plaintiff as choosing early retirement effective August 1, 2021.[15]

## **DISCUSSION**

### 1.   **Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

---

[15] Defendants' Exhs. D (Dkt. 5-5), and Q (Dkt. 5-18).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).   "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Preliminarily, the court observes that Defendants did not file an answer, nor has a scheduling order pursuant to Fed.R.Civ.P. 16(b) been entered in this action, such that discovery has not been conducted.  "[S]ummary judgment should only be granted '[i]f *after discovery*, the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.'" *Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (emphasis in original) (quoting *Berger v. United States*, 87 F.3d 60, 65 (2d Cir. 1996)).  *See Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (prior

to granting summary judgment in favor of the moving party, the "nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1968)). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom*, 201 F.3d at 97. "Such cases include those in which the claims are insufficient as a matter of law, and the record before the court is sufficient for it to conclude that 'no amount of discovery would breathe life into' the claims." *Brown v. Dodge*, 2020 WL 6785502, at * 3 (W.D.N.Y. Nov. 18, 2020) (quoting *M.B. v. Reish*, 119 F.3d 230, 232 (2d Cir. 1997)). Relevantly, in *Brown*, this court granted, prior to an answer and before any discovery was conducted, partial summary judgment, in favor of the *pro se* inmate plaintiff's Eighth Amendment medical indifference claim, because the plaintiff failed to make the requisite threshold showing of serious illness or injury to support the claim. *Brown*, 2020 WL 6785502 at * 5. Similarly, as Discussed below, in the instant case, Plaintiff, despite filing a response to Defendants' Motion, which response includes six exhibits,[16] has failed to point to anything even remotely suggesting she suffered the requisite adverse employment action to support her employment discrimination and retaliation claims, or that she was subjected to a hostile work environment, such that this is a "rare case" where summary judgment may be granted despite discovery not being conducted.

---

[16] The court notes Defendants, in their Notice of Motion (Dkt. 5), did advise Plaintiff that her failure to respond in opposition to Defendants' Motion could result in the dismissal of her action, as required. *See Jova v. Smith*, 582 F.3d 410, 414 (2d Cir. 2009) (failure of a moving party or district court to notify *pro se* litigant of the possible consequences, including dismissal, of failing to respond to motion for summary judgment is grounds for reversal of summary judgment on appeal) (citing cases).

Here, Plaintiff claims she was subjected to employment discrimination in the form of a hostile work environment based on her race and color on June 11, 2020, when Guise made racially insensitive comments to Plaintiff regarding George Floyd's death, and retaliated against Plaintiff for filing the NFTA Complaint, Injury Report and EEOC Claim regarding the incident.  Defendants argue in support of summary judgment that no Title VII action lies against Defendant Guise in his individual capacity, Defendants' Memorandum at 9, Plaintiff's Title VII hostile work environment claim is legally insufficient as a matter of law, *id*. at 9-11, Guise's comments regarding Floyd cannot be imputed to Defendant NFTA, *id*. at 12-13, and Plaintiff's retaliation claims fail because Plaintiff never experienced the requisite adverse employment action.  *Id*. at 13-14.  In opposition to summary judgment, Plaintiff does not directly address any of Defendants' arguments but explains that following the incident on June 11, 2020 during which Guise allegedly made the racially disparaging and culturally insensitive remarks regarding Floyd, she experienced stress that was so extreme as to cause Plaintiff to take a medical leave and, when Guise's employment was not terminated, forced Plaintiff into early retirement.  Plaintiff's Response, *passim*.  In further support of summary judgment, Defendants summarize their earlier arguments and point out that Plaintiff did not specifically counter Defendants' arguments in support of summary judgment, nor point to any evidence establishing a genuinely disputed material issue of fact to defeat summary judgment.  Defendants' Reply, *passim*.  Careful consideration of the moving papers and the record establishes Defendants are entitled to summary judgment.

### 2.      Employment Discrimination

Plaintiff asserts as employment discrimination claims against Defendants that she was subjected to a hostile work environment based on Guise's comments regarding George Floyd which Plaintiff maintains were racially disparaging and culturally insensitive, and subjected to retaliation for filing the NFTA Complaint, Injury Report and EEOC Claim.  Plaintiff's claims are asserted pursuant to both Title VII and NYSHRL. Preliminarily, with regard to Plaintiff's Title VII claims, Defendant Guise is not liable in his individual capacity for violating Title VII "because Title VII does not provide for individual liability."  *Cayemittes v. City of New York Dept. of Housing Preservation and Development*, 641 Fed.Appx. 60, 62 (2d Cir. 2016) (citing cases).

### 3.      Hostile Work Environment

Plaintiff alleges that on June 11, 2020, Guise, by making racially disparaging and culturally insensitive remarks about George Floyd, created a hostile work environment so severe that Plaintiff developed mental health issues for which Plaintiff took a medical leave, and ultimately was forced into early retirement.  Discrimination Charge at 1 (Dkt. 1 at 8).  Defendant argues in support of dismissal that Plaintiff offers only vague and conclusory allegations which are insufficient to state a claim for hostile work environment.  Defendant's Memorandum at 11-12.  Plaintiff makes no substantive argument in opposing Defendant's motion seeking dismissal of this claim.  Plaintiff's Response, *passim*.

#### A.      Title VII

Title VII prohibits discrimination against any employee with respect to her "compensation, terms, conditions, or privileges of employment, because of," as relevant

here, her race or color.  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 546 (2d Cir. 2010)

(quoting 42 U.S.C. § 2000e–2(a)(1)).

> "[T]his language 'is not limited to 'economic' or 'tangible' discrimination. The
> phrase 'terms, conditions, or privileges of employment' evinces a congressional
> intent 'to strike at the entire spectrum of disparate treatment of men and women'
> in employment," which includes requiring people to work in a discriminatorily
> hostile or abusive environment.

*Id*. (quoting *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993) (quoting *Meritor
Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64 (1986) ("*Meritor* ")).

Significantly, "Title VII 'does not set forth 'a generally civility code for the American

workplace.''"  *Id*. (quoting *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53,

58 (2006) (quoting *Oncale v. Sundowner Offshore Services, Inc*., 523 U.S. 75, 80

(1998))).  Nevertheless, "'[w]hen the workplace is permeated with 'discriminatory

intimidation, ridicule, and insult' . . . that is '*sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment,*' . . .

Title VII is violated,'" *id*. (quoting *Harris,* 510 U.S. at 21 (quoting *Meritor,* 477 U.S. at 65,

67)) (emphasis in *Kaytor*), "so long as there is a basis for imputing the conduct that

created the hostile environment to the employer. . . . ." *Id*. (citing cases).  Moreover, "[i]t

is axiomatic that to prevail on a claim of hostile work environment .. . , the plaintiff must

establish that the abuse was based on [the protected class]."  *Kaytor*, 609 F.3d at 547.

Specifically, to establish a hostile work environment claim, "'a plaintiff must

produce enough evidence to show that the workplace is permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment.'"

*Rivera v. Rochester Genesee Regional Transportation Authority*, 702 F.3d 685, 693 (2d

Cir. 2012) (quoting *Gorzynski*, 596 F.3d at 102 (further internal quotation omitted)).  "In

considering whether a plaintiff has met this burden, courts should 'examin[e] the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's [job] performance.'" *Id*. (quoting *Hyut v. State University of New York*, 352 F.3d 733, 745 (2d Cir. 2003)).

"Moreover, the 'test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive.'" *Kaytor*, 609 F.3d at 547 (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).  "Of course, '[i]t is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through [other means], is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic,' such as race or national origin."  *Id*. (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79-80 (1998)))).  As such, in opposing summary judgment on a hostile work environment claim, the plaintiff must produce evidence "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  *Mack v.*

*Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir.) (internal quotation omitted), *cert. denied*, 540 U.S. 1016 (2003).

### 1.    Discriminatory Intimidation in Workplace

With regard to the first criteria, the record is devoid of any evidence that the workplace was so permeated with discriminatory intimidation that was sufficiently severe or pervasive as to alter the conditions of Plaintiff's work environment.  Moreover, "'[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments. Thus, whether racial slurs constitute a hostile work environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment.'"  *Miller v. New York State Police*, 2022 WL 1133010, at *2 (2d Cir. Apr. 18, 2022) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110–11 (2d Cir. 1997)) (internal citations and quotation marks omitted).

In the instant case, Plaintiff's undisputed allegation that Guise, on a single occasion, commented on his opinion regarding the circumstances of George Floyd's death, which Plaintiff construed as racially disparaging and culturally insensitive, is simply insufficient to support a hostile work environment under Title VII.  *See Miller*, *supra*, at ** 2-3 (affirming district court's determination that twelve separate statements containing language which the plaintiff found racially offensive, made in the context of police work, yet which caused the plaintiff to experience stress, were insufficient to create a racially hostile work environment where the plaintiff failed to show any change in his work environment).  *See also Littlejohn v. City of New York*, 795 F.3d 297, 320-21

(2d Cir. 2015) (citing *Fleming v. MaxMara USA, Inc.,* 371 Fed.Appx. 115, 119 (2d Cir.2010) (concluding that no hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her"); and *Davis–Molinia v. Port Auth. of N.Y. & N.J.*, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (finding "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," "yell[ing] and talk[ing] down to," and an increased workload of menial tasks, among other factors, was not enough to show that defendants' conduct was sufficiently severe or pervasive), *aff'd,* 488 Fed.Appx. 530 (2d Cir. 2012)).  Further, unless it is "extraordinarily severe," a single incidence of harassment will not establish a hostile work environment.  *See Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 724 (2d Cir. 2010) (requiring the plaintiff, rather than show only a few isolated incidents of racial enmity, demonstrate "'the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of his employment were thereby altered.'" (quoting *Robles v. Argonaut Rest. & Diner, Inc.*, 2009 WL 3320858, at * 8 (S.D.N.Y. Oct. 9, 2009)).  Plaintiff thus has not established the first prong of a Title VII hostile work environment claim.

### 2.    Basis to Impute Offensive Conduct to Employer

Even *assuming*, arguendo, that evidence in the record could support that Plaintiff experienced a hostile work environment, Defendant NFTA would not be liable "unless 'a specific basis existed for imputing the objectionable conduct'" to the NFTA.  *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) (quoting *Alfano*, 294 F.3d at 373).  The

record, however, contains no evidence that the NFTA was aware of the allegedly hostile circumstances under which Plaintiff was required to work prior to seeking early retirement until the Plaintiff filed her NFTA Complaint, well after the encounter with Guise.  Although in *Feingold*, *supra*, the court concluded that the plaintiff provided sufficient evidence to impute his supervisor's alleged conduct to the employer by showing the employer was aware of the conduct that created the hostile work environment, but took no action to remedy the situation, *Feingold*, 366 F.3d at 152, in the instant case, the record establishes that after Plaintiff filed the NFTA Complaint on August 3, 2020, concerning Guise's conduct on June 11, 2020, Guise, was counseled and required to attend sensitivity training, a discipline which NFTA considered reasonable given Plaintiff's NFTA Complaint was the first filed against Guise who commenced his employment with the NFTA in 1983.  *See* Hardy Letter (explaining, as relevant, Guise was "re-instructed regarding acceptable behavior in the workplace," and the matter was then closed); September 2, 2020 Letter (advising the EEO/Diversity Department directed Guise to schedule sensitivity training, which was considered appropriate to address Plaintiff's NFTA Complaint because Guise had not previously been the subject of a harassment complaint since commencing employment with the NFTA in 1983).  Accordingly, there is no basis for imputing Guise's conduct to the NFTA.

The record thus shows Plaintiff cannot establish either prong of her claim that she was subjected to a racially hostile work environment.  Accordingly, summary judgment should be GRANTED on Plaintiff's Title VII hostile work environment claim.

### 3. Constructive Discharge

Insofar as Plaintiff's *pro se* complaint can be construed as alleging she was constructively discharged based on her choosing early retirement, where, as here, "an alleged constructive discharge stems from an alleged hostile work environment, a plaintiff 'must show working conditions so intolerable that a reasonable person would have felt compelled to resign.'" *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) (quoting *Pa. State Police v. Suders,* 542 U.S. 129, 147, 124 S.Ct. 2342, 159 L.Ed.2d 204 (2004)). This standard is higher than the standard for establishing a hostile work environment. *Id.*

In the instant case, Plaintiff's failure to establish a racially hostile work environment is also fatal to her constructive discharge claim. *Id*. Summary judgment should be GRANTED with respect to Plaintiff's Title VII constructive discharge claim.

### B. NYSHRL - Hostile Work Environment Claim

With regard to Plaintiff's hostile work environment claim asserted pursuant to NYSHRL § 296(1)(h), because such claim is based on Defendant Guise's conduct after October 11, 2019, the court applies the amended, "'more permissive [standard], omitting the requirement that the complained-of conduct be severe or pervasive.'" *Friederick v. Passfeed, Inc*., 2022 WL 992798, at * 6 (S.D.N.Y. Mar. 31, 2022) (quoting *Moazzaz v. MetLife, Inc.*, 2021 WL 827648, at *8 (S.D.N.Y. Mar. 4, 2021)).  The court's research reveals few cases applying the amended "more permissive standard" for hostile work environment claims under NYSHRL.  *See*, *e.g.*, *Black v. ESPN, Inc.*, 139 N.Y.S.3d 523, at *6 (N.Y. Sup. Ct. 2021) (Table) (essentially applying the same standard used to analyze hostile work environment claims under New York City Human Rights Law

("NYCHRL").  In particular, "[t]o make out a hostile work environment claim, a plaintiff must allege that she or he has been subjected to inferior terms, conditions, or privileges of employment because of his or her protected status under the [amended] NYSHRL (NY Exec. L. 296[1][h] [applying to claims filed after the amendment's effective date of October 11, 2019]; . . . or she or he has been treated less well than other employees because of her or his protected status." *Id*. (citing cases).  Nevertheless, a NYSHRL hostile work environment "claim will not succeed if the offending actions are no more than petty slights or trivial inconveniences." *Id*.

Here, as discussed above, *see* Facts, *supra*, at 4, Plaintiff alleges only that she was subjected to a single incident of racially disparaging remarks regarding Guise's opinion about George Floyd, and does not claim she was subjected to inferior terms, conditions, or privileges of employment based on Plaintiff's race, color, sex or age. Plaintiff's failure to allege she was subjected to inferior terms, conditions, or privileges of employment based on any such protected class is thus fatal to her NYSHRL hostile work environment claim.  In particular, Plaintiff fails to present any evidence asserting Guise made any reference to Plaintiff's race when he alluded to George Floyd's death. Defendant's Motion should therefore be GRANTED as to this claim.

### 4.    Retaliation

Insofar as Plaintiff's *pro se* complaint can be interpreted as alleging retaliation based on her filing of the NFTA Complaint, the Injury Report, and EEOC Claim, such claim fails because Plaintiff does not allege that upon filing either report, she was subjected to any adverse employment action, a necessary element of such claim.

Employment retaliation claims asserted under Title VII and the NYSHRL are identically analyzed according to the same burden-shifting framework applicable to disparate treatment employment discrimination claims as enunciated by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Summa v. Hofstra University*, 708 F.3d 115, 125 (2d Cir. 2013) (citing *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006)). In particular, to establish a *prima facie* case of retaliation, a plaintiff must make demonstrate that "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Schiano* 445 F.3d at 608 *Id.* at 608. "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Raniola v. Bratton,* 243 F.3d 610, 625 (2d Cir.2001)). If the employer demonstrates a legitimate, non-discriminatory reason, then "[t]he burden shifts ... back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.* at 625. In the instant case, although Plaintiff's filing of the NFTA Complaint, Injury Report and EEOC Claim constituted protected activity for purposes of retaliation claims under Title VII and NYSHRL, the record is completely devoid of any allegation or evidence that Plaintiff was subjected to any adverse employment action, such as demotion or a significant adverse alteration of Plaintiff's job duties, *see Burns v. City of Utica*, 590 Fed.Appx. 44, 49 (2d Cir. 2014) (citing listing numerous types of employment actions considered "adverse" for purposes of retaliation including, *inter alia*, demotion, denial of sick leave, or directed to attend

remedial training), let alone any such action that was causally connected to Plaintiff's participation in protected activity.

"The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006)).  "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII: '[T]he antiretaliation provision, unlike the substantive [discrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment.'" *Id.* (quoting *Burlington N.*, 548 U.S. at 64).  Specifically,

> Context matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.

*Id.* (quoting *Burlington N.*, 548 U.S. at 69 (internal quotation mark omitted and citing *Kessler v. Westchester Cty. Dep't of Soc. Servs.,* 461 F.3d 199, 207–09 (2d Cir.2006)).

In the instant case, not only has Plaintiff failed to allege she was subjected to any adverse employment action, even under the broader standard for retaliation claims as compared to disparate treatment claims, but Plaintiff also fails to point to any evidence that could support a disparate treatment claim.  Moreover, although Plaintiff's Workers' Compensation claim was denied on February 8, 2021, the reason given for such denial

was Plaintiff's failure to submit the required supporting medical documentation for her

claimed injury.  As explained by the Workers' Compensation Board,

> The Board has made multiple attempts by both letter and telephone to obtain a required medical report referencing your work-related injury.  The Board has also sent you a letter explaining that the required pre-hearing conference on your controverted claim could not be scheduled because no medical report had been received.  The Board is now placing this claim in a "No Further Action" status pending submission of a medical report referencing an injury.  No Further action is planned by the Board at this time.

Administrative Decision (Defendants' Exh. L).

The Administrative Decision further stated it would become final on March 10, 2021,

unless Plaintiff filed an objection prior to then.

Significantly, Plaintiff does not deny nor dispute that her Workers' Compensation

claim was denied based on her failure to submit the requested medical documentation,

nor does Plaintiff assert, and the record does not suggest, that she filed any objection to

the Administrative Decision.

Accordingly, summary judgment should be GRANTED with regard to Plaintiff's

retaliation claims under both Title VII and the NYSHRL.

## **CONCLUSION**

Based on the foregoing, Defendants' Motion (Dkt. 5), should be GRANTED.  The

Clerk of Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 6th, 2022
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and the attorneys for the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        September 6th, 2022
                    Buffalo, New York